IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| CHERYL THOMPSON, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 3:15-cv-05016-MDH |
| ) | |
| ROBERT LAWRENCE, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are Defendants Graham, Lawrence, Shaw and Toler's Motion to Dismiss (Doc. No. 39); Defendant Mitchell Shaw's Motion to Dismiss (Doc. No. 41); Defendant Jordan Justice's Motion to Dismiss (Doc. No. 43) and Defendant Brian O'Sullivan's Motion to Dismiss (Doc. No. 45). The motions have been fully briefed and are ripe for review.

## BACKGROUND

Plaintiffs have brought this cause of action against law enforcement officers from the Lamar police department, the Barton County Sheriff's Department and the Missouri Highway Patrol. Plaintiffs' First Amended Complaint raises two counts – Count I – against Defendant Robert Lawrence for Violation of the 14th Amendment and 42 U.S.C. § 1983; and Count II – against the remaining Defendants for Violation of the 14th Amendment and 42 U.S.C. § 1983. Plaintiffs' claims against all the Defendants arise out of two separate, but allegedly related, incidents that occurred on October 5 and October 8, 2012, involving a former Lamar police officer – Landon Ison.[1]

Plaintiffs' First Amended Complaint alleges the following:

---

[1] Ison was a former police officer with the city of Lamar for nine years before he quit his position "without explanation or notice" in August 2012.

1

On October 1, 2012, Ison sent a text message to Defendant Sheriff Shaw, the elected Sheriff of Barton County, stating he may need to be arrested in the coming days, allegedly referencing that he had discovered his wife was having an affair. Plaintiffs allege Sheriff Shaw advised Ison "not to do anything stupid like commit a felony; but it was okay to commit a misdemeanor."

On October 5, 2012, Ison called Defendant Robert Lawrence, a Lamar police officer, and asked him for a ride to his father-in-law's house. Ison told Lawrence he had been drinking and his father-in-law wanted to talk to him. Defendant Lawrence drove Ison to his father-in-law's house, however, upon arriving at the house realized Ison had lied to him about his reason for going there. Ison's estranged wife, Dana Ison, was at the house, along with her parents, and a "peace disturbance" ensued. Plaintiffs allege Defendant Lawrence did nothing to restrain Ison or stop his conduct. Cheryl Thompson, Ison's mother in law, called for the police.[2] Defendants Steve Shaw, Daniel Graham and Rawn Toler, Lamar police officers, responded to the residence. In addition, Jordan Justice, a Barton County Sherriff's Department officer and Brian O'Sullivan, a Missouri Highway Patrol trooper, responded to the residence.[3] Plaintiffs allege "Dana Ison was a victim of domestic assault perpetrated by Landon Ison," and that Ison made threats to Dana Ison. However, Plaintiffs do not specifically allege what events occurred between Ison and the individuals at the residence on October 5, 2012.

---

[2] Plaintiffs' First Amended Complaint alleges a "peace disturbance" ensued. Plaintiffs later also allege in Count I that Ison was a "domestic abuser," and in Count II that Defendants "knew or should have known" that "a criminal offense of domestic assault was committed in their presence." However, there are no specific allegations of what occurred on October 5, 2012 with regard to the "peace disturbance."

[3] Plaintiffs allege Defendant Sheriff Shaw knew of the domestic disturbance and responded to the scene, but did not approach the house and instead staged approximately one block away.

Plaintiffs also allege that on the same day, but prior to the domestic disturbance, Ison sent threatening messages to Sheriff Shaw alleging that Sheriff Shaw was also having an affair with Ison's wife.  It is alleged Ison made physical threats of violence to Sheriff Shaw during that day.  Plaintiffs allege Sheriff Shaw did not inform the responding officers on October 5, 2012 that Ison had been threatening Sheriff Shaw throughout that day.

On October 5, 2012, Ison was not arrested as a result of the domestic disturbance call.  Rather, Missouri State Highway Patrol Trooper O'Sullivan drove Ison to his sister's residence in Lamar, Missouri and left him there.

Plaintiffs then allege that during the late evening of October 8, 2012, and the early morning of October 9, 2012, Ison and defendant Robert Lawrence were texting about the events from October 5, 2012.  Ison asked Lawrence about the police logs and reports from the incident.  Lawrence is alleged to have told Ison that the Lamar Police Department was referring the report to the Barton County Prosecuting Attorney's Office for possible criminal charges.  Plaintiffs allege Lawrence knew Ison was angry about this information.  Within one hour of the communications with Lawrence, Ison drove to his former home and shot and killed his wife and also shot his mother-in-law.  Plaintiffs allege Lawrence knew Ison was angry and did nothing to inform Ison's wife or in-laws about Ison or to "check on their well-being."

## **STANDARD OF REVIEW**

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The plaintiff must plead facts that show more than a mere speculation or

3

Case 3:15-cv-05016-MDH   Document 60   Filed 09/25/15   Page 3 of 15

possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. The reviewing court must read the complaint as a whole rather than analyzing each allegation in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## **DISCUSSION**

All the Defendants move to dismiss the claims against them based on sovereign and/or qualified immunity and failure to state a claim under the Fourteenth Amendment. Plaintiffs bring Count I against defendant Robert Lawrence; and Count II against the remaining Defendants. Plaintiffs claim defendant Lawrence not only failed to arrest Ison on the night of October 5, 2012, but also created danger for Plaintiffs by communicating information to Ison regarding the possible criminal charges that may result from the incident on October 5, 2012. Plaintiffs claim the remaining Defendants "knew or should have known that a criminal offense of domestic assault was committed in their presence" and that they did not arrest or otherwise detain Ison. Plaintiffs further allege the failure to arrest was made pursuant to "defendants' official and unofficial policies and practices of treating law enforcement personnel differently than other civilian suspects and perpetrators of crimes." Defendants argue they are immune from these claims.

## I. Individual Capacity Claims

When performing discretionary functions, government officials generally are shielded from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004), citing, *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity 'is an immunity from suit rather than a mere defense to liability,' which 'is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* Qualified immunity is available "to all but the plainly incompetent or those who knowingly violate the law." *Id.*, citing, *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.,* citing, *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

When analyzing qualified immunity, courts conduct a two-party inquiry. *Id.* First, the Court must consider whether the "facts alleged, taken in the light most favorable to the party asserting the injury, show the defendants' conduct violated a constitutional right." *Id.*, citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); and *Tuggle v. Mangan,* 348 F.3d 714, 720 (8th Cir. 2003). If a violation of a constitutional right could be established on the facts alleged, the second inquiry is whether the right was clearly established at the time the violation occurred. *Id.*

### A. Violation of a Constitutional Right

"The Due Process Clause generally does not provide a cause of action for "a State's failure to protect an individual against private violence." *Montgomery v. City of Ames*, 749 F.3d 689, 694 (8th Cir. 2014), *cert. denied sub nom. Montgomery v. City of Ames, Iowa*, 135 S. Ct. 205, 190 L. Ed. 2d 158 (2014); citing, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489

U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, the "Constitution requires a State to protect a person in two circumstances: when the person is in the State's custody, and when the State created the danger to which the individual is subjected." *Id.,* citing, *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011).

Here, Plaintiffs argue that the Defendants created the danger involved in this lawsuit, requiring protection under the Constitution. To succeed on that theory, Plaintiffs must show: (1) that they were a member of a limited, precisely definable group; (2) that Defendants' conduct put them at a significant risk of serious, immediate, and proximate harm; (3) that the risk was obvious or known to the Defendants; (4) that the Defendants acted recklessly in conscious disregard of the risk; and (5) that in total, the Defendants' conduct shocks the conscience. *Id.* at 694-95.

To shock the conscience, an official's action must "either be motivated by an intent to harm or, where deliberation is practical, demonstrate deliberate indifference." *Id.* at 695, citing, *Hart v. City of Little Rock*, 432 F.3d 801, 805–06 (8th Cir. 2005). "Deliberate indifference requires both that the official 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and that the official actually draw that inference." *Id.* "Mere negligence, or even gross negligence, is not actionable." *Id.* "[I]f the state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced, the state actor, depending on his or her state of mind, may have committed a constitutional tort." *Avalos v. City of Glenwood*, 382 F.3d 792, 799 (8th Cir. 2004); citing, *S.S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000)(en banc).

In *Avalos,* a 16 year old girl was caught by the police with drugs that she had obtained from a former boyfriend and his brother. *Id.* at 795. As a result, the girl, her mother and her

stepfather, became involved in a police investigation regarding the source of the drugs and its distribution. *Id.* During the course of the investigation, the stepfather made comments to the police stating things like he would "kick the shit out of the boys and take matters into his own hands," that "guns were not his thing anymore but if I have to I'll get me one," and "I will take care of the problem myself." *Id.* at 795-797. During the time these statements were made, the police discouraged the stepfather from taking any action. *Id.* The daughter and stepfather were subsequently subpoenaed to testify against the prior boyfriend, who had been threatening the girl regarding her involvement with the police. *Id.* On the day of the subpoena, the stepfather went to the boys' home, and after drinking a bottle of tequila, shot one of the boys. *Id.* at 797. The boy and his family later brought suit against the law enforcement officers who were involved in the investigation. *Id.*

The 8th Circuit stated "the shooting in this case was simply too remote a consequence to constitute a substantive due process violation. Detective Wake's actions relative to the investigation clearly were neither immediate nor proximate to the shooting." *Id.* at 800; citing *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 733 n. 4 (8th Cir. 1993). The Court further noted, "to find Detective Wake violated the plaintiffs' substantive due process rights in this case would create a difficult situation for police officers. Requiring officers to act upon every threat they hear could expose the officers to claims of civil liability for false arrest." *Id.*, citing, *Ricketts v. City of Columbia*, 36 F.3d 775, 780 (8th Cir. 1994).

Here, similar to *Avalos,* Plaintiffs have failed to plead any facts that would constitute actions on behalf of Defendants that put Plaintiffs at a significant risk or serious, immediate and proximate harm, that were obvious to the Defendants or that would rise to the level of conscience shocking conduct.

7

### 1. Defendants' Justice, O'Sullivan, Shaw, Graham, Toler and Shaw's Motions to Dismiss.

First, with regard to all the Defendants, with the exception of Robert Lawrence who is discussed separately below, Plaintiffs' allegations against the officers arise out of the alleged failure to arrest Ison after the "peace disturbance" on October 5, 2012. As previously mentioned, Plaintiffs fail to plead any specific facts upon which they allege Ison should have been arrested. Plaintiffs allege the officers "should have known" that a "criminal offense of domestic assault was committed," but fail to plead what, if any, actions they believe support that argument. Other than alleging that the police were called when a peace disturbance ensued, there are no allegations of any specific threats, or what alleged physical violence occurred, if any, against the named Plaintiffs, Dana Ison (Ison's wife), or any other basis upon which Ison should have been arrested on that night. Further, there is no allegation that Ison's presence at the home that evening violated any order of protection requiring his arrest.

As the 8th Circuit has stated, "to hold an officer's failure to arrest an individual for one incident of harassment which causes a subsequent incident of violence would remove a fundamental part of our criminal justice system - an officer's discretion to decide when to arrest. *Id.* at 801, citing, *Ricketts v. City of Columbia,* 36F.3d 775, 780 (8th Cir. 1994).[4] Such a holding "would open up municipalities to unprecedented liability under § 1983." *Id.*(holding there was no probable cause or other reasonable justification for detaining the stepfather and remanding for entry of judgment in favor of the defendants). *Id.* at 801. Even if Ison had physically assaulted someone on October 5, 2012, which is not clearly alleged in Plaintiff's First Amended

---

[4] If an officer's actions do not render the plaintiff more vulnerable to risks created by others, but rather leave them in the same situation as before there is no cause of action. "Absent some increased danger due to the defendants' [action] or inaction, there is no due process violation." *Villanueva v. City of Scottsbluff,* 779 F.3d 507, 512 (8th Cir. 2015)

Complaint, Plaintiffs have failed to plead how Defendants' failure to arrest Ison rises to the level of a constitutional violation.

Plaintiffs certainly have not pled brutal or offensive conduct on behalf of the Defendants. Taking Plaintiffs' allegations as true, that Defendants should have arrested Ison on October 5, 2012, there are no further allegations that the failure to arrest Ison put Dana Ison, or the other Plaintiffs at a significant risk or serious, immediate, or proximate harm. The 8th Circuit has held that the act of arresting someone is discretionary, and Plaintiffs have failed to plead how the failure to arrest Ison rises to a constitutional violation. The conduct certainly does not shock the conscience, and in fact, Ison was removed from the residence by Missouri Highway Patrol Trooper O'Sullivan. On the night of October 5, 2012, there simply is nothing to show that Plaintiffs were in a more vulnerable position based on the Defendants' actions or the alleged failure to arrest Ison. Even assuming Defendants had a duty to protect Plaintiffs from Ison, which this Court does not believe exists, Plaintiffs cannot demonstrate a substantive due process violation because Defendants' actions were not "conscience-shocking." Actionable substantive due process claims involve a "'level of ... abuse of power' ... 'so "brutal" and "offensive" that [they do] not comport with traditional ideas of fair play and decency.'" *Id.* at 800; citing, *S.S. v. McMullen,* 225 F.3d 960, 964 (8th Cir. 2000)(citations omitted).

Further, Plaintiffs' specific allegations against Sheriff Shaw include that when Ison informed Sheriff Shaw that he believed his wife was cheating on him and that he wanted to "beat his ass," Sheriff Shaw responded "not to do anything stupid like commit a felony; but it was okay to commit a misdemeanor." Ison also allegedly threatened Sheriff Shaw on October 5, 2012 and Sheriff Shaw did not inform the other responding officers of the threats. Rather, Sheriff Shaw staged from a distance and did not arrest Ison. Again, Plaintiffs have failed to

9

plead why Ison should have been arrested on October 5, 2012, how the failure to arrest Ison on October 5, 2012 created a constitutional violation, or how Sheriff Shaw's conduct placed Plaintiffs in a situation of significant risk or serious, immediate, or proximate harm. Sheriff Shaw's conduct simply does not rise to the level of shock the conscience behavior.

Finally, Plaintiffs claim they have sufficiently stated a claim that Defendants somehow communicated to Ison on the night of October 5, 2012 that he was immune from arrest from his "criminal conduct." However, other than alleging a domestic disturbance occurred, there are no allegations of criminal conduct that establish an arrest was required. Further, Plaintiffs First Amended Complaint also alleges Ison was told (by Defendant Lawrence) that his actions were being turned over to the prosecuting attorney. Plaintiffs' own allegations negate any "implied" communication Ison was immune from consequence for his alleged "criminal conduct," when he was told by one of the Defendants that the incident was being referred to the prosecutor.

After reviewing the allegations contained in Plaintiffs' First Amended Complaint, and assuming them to be true for purposes of a Motion to Dismiss, the Court finds Defendants' Justice, O'Sullivan, Shaw, Graham, Toler and Shaw's Motions to Dismiss should be granted.

**2. Defendant Lawrence's Motion to Dismiss**

Plaintiffs bring a separate count, Count I, against individual Defendant Robert Lawrence. Count I includes the same allegations as the other Defendants, but in addition alleges Lawrence communicated with Ison on the night before and the morning of the shooting. With regard to the same allegations against the other Defendants, the failure to arrest claim, the Court finds Lawrence's Motion to Dismiss should be granted for the same reasons set forth above. Plaintiffs, however, also allege the communication between Lawrence and Ison constituted state created danger with regard to Ison's future violent conduct.

10

With regard to Plaintiffs' additional allegations against Lawrence, the communications on October 8-9, 2012, Plaintiffs still must prove the same elements set forth above. In *Montgomery v. City of Ames*, Tamela Montgomery, the victim of a shooting, brought § 1983 claims against law enforcement officers and others. 749 F.3d 689 (8th Cir. 2014), *cert. denied sub nom. Montgomery v. City of Ames, Iowa,* 135 S. Ct. 205, 190 L. Ed. 2d 158 (2014). Montgomery had a protective order in place after Angenaldo Bailey was convicted for second-degree domestic-abuse assault. *Id.* at 692. The protective order specifically stated that Bailey faced immediate arrest if he violated the order. *Id.* Montgomery placed a call to law enforcement stating Bailey had been violating the protective order. *Id.* A police officer responded and discussed the allegations with Montgomery and informed her he would get the "other side of the story" from Bailey and return. *Id.* Montgomery warned the officer that if he contacted Bailey, but did not arrest him, he would likely violently retaliate against her. *Id.* The officer contacted Bailey and interviewed him. *Id.* Bailey stated Montgomery had been calling him. The officer instructed Bailey not to contact Montgomery in any way but did not arrest him. *Id.* He then returned to Montgomery's house and she confirmed that she had in fact called Montgomery. The officer advised her that she should be safe but to call the police if she needed assistance. That evening Bailey returned to Montgomery's house with a gun and shot her three times. *Id.* Montgomery alleged the defendants created the danger that Bailey would harm her. *Id.* at 693-694.

With regard to the plaintiff's claims against the officer, the 8th Circuit stated the following: "to shock the conscience, as required by the fifth element identified in *Fields*, an official's action must either be motivated by an intent to harm or, where deliberation is practical, demonstrate deliberate indifference." *Id.* at 695, citing, *Hart v. City of Little Rock*, 432 F.3d 801,

11

805–06 (8th Cir. 2005). Deliberate indifference requires both that the official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually draw that inference. *Id.* Mere negligence, or even gross negligence, is not actionable. *Id*.

The 8th Circuit held that the officer's investigation of an alleged crime did not rise to the level of deliberate indifference. *Id.* The Court found that it was reasonable for the officer to investigate whether Bailey had violated the protective order and under the circumstances presented to the court, "a reasonable jury could not conclude that the officer acted recklessly or in a conscience-shocking manner by declining to arrest Bailey before the investigation proceeded the next day." *Id.*

Here, Plaintiffs allege Lawrence communicated with Ison regarding the officer's reports and logs of the incident on October 5, 2012. Plaintiffs further allege Lawrence informed Ison the police department was referring the report to the Barton County Prosecuting Attorney for possible criminal charges and that Ison was angry at the possibility of facing any such charges.

Defendant Lawrence argues that advising a former nine-year veteran police officer that there were reports made of the October 5, 2012 incident, and further that the report was being sent to the prosecutor's office does not constitute conscious shocking behavior. As a former nine year officer with the Lamar police department, Ison would have knowledge regarding how the police department processes reports, and refers matters to the prosecutor for possible prosecution. Here, there is no evidence Lawrence's conduct in communicating this information to Ison created a known substantial risk or serious harm. Lawrence's communication with Ison most likely confirmed what Ison probably already knew may happen with regard to the prior incident. Plaintiffs allege Defendants had a policy of treating officers differently. However, the

12

fact Ison's conduct was being referred to the prosecutor established that he was not in fact treated differently, nor was there any reason to suspect that a former nine year veteran officer would commit such a violent act after learning how the incident was being handled.  This Court finds that Lawrence's communication to Ison does not rise to the level of deliberate indifference.  A reasonable jury could not conclude that Lawrence acted recklessly or in a conscience-shocking manner by communicating this information to Ison.  While Lawrence's conduct may not have been appropriate, or may possibly have violated the police department's internal policies and procedures, there is nothing with regard to the alleged communication between Lawrence and Ison that could have possibly created the risk that Ison would commit such a terrible crime.[5]

### B. Clearly Established Right

The Court finds that Defendants did not violate the Plaintiffs' substantive due process rights for the reasons stated herein.  Therefore, the Court does not need to address the second prong, whether Plaintiffs have plead any substantive due process rights were clearly established at the time of Defendants' conduct. See *Avalos v. City of Glenwood*, 382 F.3d at 801.

### II. Official Capacity Claims

Plaintiffs' claims against the individual Defendants in their official capacity are actually claims against the government entities that employ them.  A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. *Brockinton v. City of Sherwood, Ark.,* 503 F.3d 667, 674 (8th Cir. 2007); citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  A governmental entity cannot be held vicariously liable for its agent's acts under § 1983.  *Id.*  Rather, a plaintiff must identify a governmental "policy or

---

[5] As the 8th Circuit has stated, "mere negligence, or even gross negligence, is not actionable," and there is nothing to substantiate that Lawrence could have, or did, infer a substantial risk of harm to Plaintiffs, or Dana Ison, would arise from the communication.  See *Montgomery v. City of Ames,* 749 F3d at 694-695.

13

Case 3:15-cv-05016-MDH   Document 60   Filed 09/25/15   Page 13 of 15

custom that caused the plaintiff's injury" to recover from a governmental entity under § 1983. *Id.,* citing, *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A governmental policy "involves a deliberate choice to follow a course of action ... made from among various alternatives by an official who has the final authority to establish governmental policy." *Id.*

A governmental custom involves "a pattern of 'persistent and widespread' ... practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law." *Id.* "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Id.*, citing *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).

It is well established "that a municipality cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013); citing, *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Id.* Deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of their action. *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011).

Plaintiffs' First Amended Complaint argues that their rights were violated, but fail to plead any facts that would, if proven as true, establish the existence of an unconstitutional policy or custom. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 1950

14

(2009). Plaintiffs have failed to plead any facts regarding the alleged unconstitutional policy or practices of the Defendants and for the reasons stated herein, the Court finds Plaintiffs have failed to plead a claim for individual liability. Therefore, Plaintiffs' claims against the governmental entities, the official capacity claims, are also dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated herein the Court **ORDERS** the following:

1. Defendants Robert Lawrence, Steve Shaw, Daniel Graham and Rawn Toler's Motion to Dismiss (Doc. No. 39) is **GRANTED**.

2. Defendant Mitchell Shaw's Motion to Dismiss (Doc. No. 41) is **GRANTED.**

3. Defendant Jordan Justice's Motion to Dismiss (Doc. No. 43) is **GRANTED**.

4. Defendant Trooper Brian O'Sullivan's Second Motion to Dismiss (Doc. No. 45) is **GRANTED**.

**IT IS SO ORDERED.**

Date: September 25, 2015

                                      */s/ Douglas Harpool*
                                      **DOUGLAS HARPOOL**
                                      **UNITED STATES DISTRICT JUDGE**